In re:

Varenza Lavonda Miller,                    Case No. 25-22296-beh

                Debtor.                    Chapter 7

State of Wisconsin,
Department of Workforce Development,

                Plaintiff,

v.                                          Adv. No. 25-02096-beh

Varenza Lavonda Miller,

                Defendant.

## DECISION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

On April 25, 2025, debtor Varenza Miller filed a Chapter 7 bankruptcy petition. The State of Wisconsin, Department of Workforce Development (DWD), timely filed a complaint seeking a determination that Ms. Miller's debt to the DWD is not dischargeable under 11 U.S.C. §§ 523(a)(2)(A) and (a)(7). Ms. Miller filed an answer to the complaint, addressing some, but not all, of the DWD's allegations.[1] Discovery ensued, and the DWD subsequently moved for summary judgment.[2] For the reasons that follow, the Court will grant the motion.

---

[1] After Ms. Miller failed to file a timely answer the complaint, the DWD moved for default judgment, to which Ms. Miller objected. The Court thereafter permitted Ms. Miller another opportunity to answer the complaint. *See* ECF Nos. 5, 6, 13 & 16.

[2] Because Ms. Miller is not represented by counsel, the DWD, at the Court's instruction, provided notice of her obligations to respond properly to its motion and the consequences of failing to do so, including both the applicable text of Federal Rule of Civil Procedure 56 and a plain English explanation of the summary judgment procedure. *See Timms v. Frank,* 953 F.2d 281, 285 (7th Cir. 1992); ECF Nos. 22 & 24.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered under 28 U.S.C. 157(a). Determining whether a debt is dischargeable is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and the Court may enter a final order.

## FACTS

Based on the record, and for purposes of summary judgment, the Court finds the following material facts to be undisputed or not subject to reasonable dispute:

1. In 2022, Ms. Miller filed eight weekly unemployment benefit claims that are at issue in this litigation: six claims for weeks 27 through 32 (the weeks ending July 2 through August 6, 2022), and two claims for weeks 35 and 36 (the weeks ending August 27 through September 3, 2022) (the "Working Weeks"). ECF No. 24-3, at 27–42 (Ex. E).

2. During the Working Weeks, Ms. Miller was employed by Super 8 Motel (among others). On each unemployment benefit claim made in the Working Weeks, Ms. Miller reported that she had worked for and earned part-time wages from Super 8. *Id.*[3]

3. Also during the Working Weeks, Ms. Miller was employed by Nyholm & Associates SC ("Nyholm"). On the unemployment benefit claims made in weeks 27 through 32, Ms. Miller did not report any work or wages from Nyholm. Ex. E. On the claims made in weeks 35 and 36, Ms. Miller reported working 18 hours and earning wages of $199 from Nyholm. *Id.*

4. In August of 2022, the DWD began investigating Ms. Miller's working relationship with Nyholm, first mailing the employer a wage verification/eligibility letter, and later a Weekly Earnings Audit report. *See* ECF No. 24-3, at 51 (Ex. K); *id.* at 45–47 (Ex. G).

5. Nyholm's response to the weekly audit report differed greatly from Ms. Miller's disclosure. For weeks 27 through 32—and contrary to her certifications of performing *no* work—Nyholm reported that Ms. Miller had performed more than 142 hours of work (ranging from 19 to 28 hours per week) and earned almost $1,700 in wages. Likewise, for weeks 35 and 36, Nyholm's response reflected hours and wages

---

[3] Although her reporting of wages from Super 8 is not the basis for the DWD's underlying complaint, the DWD says that Ms. Miller's reporting here was inaccurate and serves as further evidence of her fraudulent intent in making other false representations.

significantly exceeding those reported by Ms. Miller: almost 38 hours of work (not 18), and earnings of $435.21 (not $199). Ex. G.

6. Ms. Miller does not deny working for Nyholm during the Working Weeks, failing to report her work and wages for weeks 27 through 32 of 2022, or grossly underreporting her work and wages for weeks 35 and 36 of 2022. *See* ECF No. 24-3, at 6–23 (Ex. C); Ex. E.[4]

7. Based on Ms. Miller's inaccurate reporting of her Nyholm employment and other information received during its investigation, the DWD concluded that Ms. Miller had engaged in concealment (i.e., that Ms. Miller "intentionally misle[]d the department by withholding or hiding information or making a false statement or misrepresentation," Wis. Stat. § 108.04(11)(g)), and issued an administrative determination that it had erroneously paid her unemployment insurance benefits to which she was not entitled in the amount of $1,811.00. *See* ECF No. 24-3, at 53–61 (Ex. M); *id.* at 62 (Ex. N).

8. For the same reasons, the DWD assessed Ms. Miller a civil penalty of $724.40 under Wis. Stat. § 108.04(11)(bh), and a future benefit amount reduction ("BAR") of $5,478.00 under Wis. Stat. §§ 108.04(11)(be) & (bm). Ex. M.

9. The DWD also incurred collection costs of $71.94. *See* ECF No. 24-3, at 24–26 (Ex. D).

10. The initial determination concerning Ms. Miller's overpayment and concealment is now final. Ms. Miller has not repaid any of the overpayment, civil penalty, or collection costs.[5]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Fed. R. Bankr. P. 7056. A dispute is

---

[4] The DWD sent Ms. Miller discovery requests, along with a cover letter directing her to answer each request for admission "with an admit, deny, or objection in the blank space," and stated that the responses must be signed before a notary. *See* Ex. C. Ms. Miller's responses were incomplete and not notarized. More importantly, while she contested the DWD's accounting of her actual hours and wages for Super 8, she did not deny the same for Nyholm. *Id.*

[5] Although Ms. Miller contended in her responses to the DWD's interrogatories that she repaid part of the penalty, *see* Ex. C, she appears to have confused the amounts withheld due to her disqualification for future unemployment benefits (her "BAR forfeiture") with repayments of the existing overpayment and/or penalty debts. *See id.*

"genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To be "material," a fact must be "outcome-determinative under governing law." *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997).

The moving party bears the burden of establishing that summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has done so, the nonmoving party cannot withstand summary judgment by merely resting on her pleadings but instead must "present affirmative evidence in order to defeat" the motion. *Anderson,* 477 U.S. at 257–58. If the non-moving party fails to properly address a movant's assertion of fact, the Court may consider the fact undisputed. Fed. R. Civ. P. 56(e)(2).

The DWD filed a properly supported motion for summary judgment. In response, Ms. Miller did not contest any of the factual allegations or evidence offered by the DWD; rather, she asked the Court to dismiss the complaint solely for reasons of alleged financial hardship. ECF No. 25.

Although *pro se* litigants like Ms. Miller in certain instances may be "entitled to benefit from various procedural protections not otherwise afforded to the ordinary attorney-represented litigant," *Jones v. Phipps,* 39 F.3d 158, 163 (7th Cir. 1994), such instances of "leniency" do not extend to the Federal Rules of Civil Procedure. *See id.* In the context of summary judgment, a court need not, even for an unrepresented party, "scour the record looking for factual disputes," and *pro se* litigants, like all litigants, cannot avoid summary judgment without demonstrating a material dispute of fact. *Greer v. Bd. of Ed. of the City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001).

## ANALYSIS

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge "any debt . . . for money . . . obtained by . . . false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C. § 523(a)(2)(A). To succeed on its claim, the

DWD must prove, by a preponderance of the evidence, that: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which [the DWD] justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010); *see also Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011).

Here, the undisputed evidence establishes all required elements. A "false representation" is an express misrepresentation or omission, which can be spoken, written, or demonstrated through conduct, while "false pretenses" include implied misrepresentations or conduct intended to create or foster a false impression. *See CQM, Inc. v. VandenBush (In re VandenBush)*, 614 B.R. 306, 315 (Bankr. E.D. Wis. 2020). In this case, Ms. Miller made at least eight separate false certifications by either failing to report, or underreporting, her hours and wages from Nyholm during the Working Weeks. She has not denied that these certifications were false, nor that she made them knowingly.

As for intent to deceive, "[d]etermining whether a debtor had the requisite intent under § 523(a)(2)(A) is . . . a factual, subjective inquiry decided by examining all of the relevant circumstances," and "a court may [] rely on a pattern of representations to infer intent." *6050 Grant, LLC v. Hanson (In re Hanson)*, 437 B.R. 322, 328 (Bankr. N.D. Ill. 2010). Based on Ms. Miller's course of conduct—including the significant amount and repeated instances of her reporting discrepancies—the Court concludes that Ms. Miller intended to deceive the DWD in falsely certifying her work and wages from Nyholm. *Compare Ohio Dep't of Job & Family Servs. v. Yuppa (In re Yuppa)*, No. 12-31619, 2013 WL 4854479, at *4 (Bankr. S.D. Ohio June 12, 2013) (finding fraudulent intent on summary judgment when the debtor filed "not one, but ten false certifications" of her employment status during the weeks at issue).

Finally, the DWD justifiably relied on Ms. Miller's false representations. The statutory scheme surrounding Wisconsin's unemployment compensation program requires the DWD to rely on the reporting of its claimants, who bear the burden of proving eligibility. "[T]he majority of courts that have considered

the issue have held that it is justifiable for state agencies to rely on representations made in a claimant's initial application and his or her weekly certifications when determining the claimant's eligibility for benefits." *Michigan Unemployment Insurance Agency v. Heinisch (In re Heinisch)*, 600 B.R. 393, 403–04 (Bankr. W.D. Mich. 2019) (citing, *inter alia*, *Yuppa*, 2013 WL 4854479 at *4, and *Kansas v. Oliver (In re Oliver)*, 554 B.R. 493, 501-02 (Bankr. D. Kan. 2016)). Ms. Miller's misrepresentations caused the DWD to pay her $1,811 in benefits to which she was not entitled (and led to additional penalties and collection costs,[6] which Ms. Miller has not refuted).

## CONCLUSION

For all these reasons, the Court concludes that the DWD has met its burden of proving that Ms. Miller obtained unemployment benefit overpayments through fraudulent misrepresentations on which the DWD justifiably relied to its detriment. The resulting debt for $1,811 attributable to benefit overpayments, $71.94 in pre-petition collection costs, plus the $350.00 filing fee in this proceeding, for a total of $ 2,232.94, is not dischargeable under 11 U.S.C. § 523(a)(2)(A), while the unpaid civil penalty balance of $724.40 is not dischargeable under 11 U.S.C. § 523(a)(7).

The Court will issue a separate order for judgment consistent with this decision.

Dated: May 15, 2026

By the Court:

Beth E. Hanan
United States Bankruptcy Judge

---

[6] *See* Wis. Stat. §§ 108.04(11)(bh) & 108.22(11)(a); 11 U.S.C. § 523(a)(7) (excepting from discharge any debt for a "fine, penalty, or forfeiture payable to or for the benefit of a governmental unit, [that is] not compensation for actual pecuniary loss," other than certain tax penalties); *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998) (section 523(a)(2)(A) "encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor").